UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEROMY OELKER,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF IDAHO, et al.,<br><br>Defendants. | Case No. 1:24-cv-00410-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

## I. INTRODUCTION

Plaintiff Jeromy Oelker filed an Application to Proceed in Forma Pauperis, a Complaint, and two Petitions for Writ of Habeas Corpus in the United States District Court for the District of Nevada, which have been transferred to this Court pursuant to 28 U.S.C. § 1406(a). (Dkts. 1, 5). The Clerk of this Court conditionally filed Oelker's Complaint for a Civil Case (Dkt. 1-1) and Petitions for Writ of Habeas Corpus (Dkts. 1-2, 1-3, 7). (Dkt. 7). Pursuant to 28 U.S.C. § 1915, the Court reviews Oelker's request to determine whether he is entitled to proceed in forma pauperis, which permits civil litigants to proceed without prepayment of the filing fee or to pay the filing fee over time. *Rice v. City of Boise City*, No. 1:13-CV-00441-CWD, 2013 WL 6385657, at *1 (D. Idaho Dec. 6, 2013). The Court also undertakes an initial review of Oelker's Complaint to ensure it meets the minimum required standards. *See* 28 U.S.C. § 1915(e)(2)(B). For the reasons explained below, the Court **denies** Oelker's In Forma Pauperis Application and **dismisses** his Complaint for failure to state a claim for relief. Specifically, the Court dismisses with prejudice Oelker's various

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

claims against the State of Idaho, Public Defender Brennan Wright, and Chief Judge David Nye for the reasons set forth below.

## II. APPLICATION TO PROCEED IN FORMA PAUPERIS

"[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal . . . without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). To qualify for In Forma Pauperis status, a plaintiff must submit an affidavit that includes a statement of all assets he possesses and that indicates he is unable to pay the fee required. The affidavit is sufficient if it states the plaintiff, because of his poverty, cannot "pay or give security for the costs" and still be able to provide for himself and dependents the "necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (internal quotation marks omitted).

The Court may deny an in forma pauperis application—and may even dismiss a case—if the plaintiff's complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990) (stating that a court may "deny leave to proceed in forma pauperis at the outset if it appears from the face of the proposed complaint that the action is . . . without merit." (internal quotation marks and alteration omitted).

The Court has reviewed Oelker's in forma pauperis application. Oelker's attached affidavit specifies lack of income, cash on hand, expenses, and debts. (Dkt. 1). The affidavit, however, omits the value of his home and vehicle, asserting that each is unavailable to him due to ongoing criminal

proceedings. (*Id.* at p. 2). He has $40 of cash on hand. (*Id.*). Because his monthly income is $0 and monthly expenses are $150, Oelker's monthly expenses exceed his income by about $150 each month. (*Id.*).

Notwithstanding Oelker's poverty, as outlined below, the Court finds he has failed to state a claim upon which relief can be granted. Accordingly, the application is **denied**. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### III. SUFFICIENCY OF COMPLAINT

**A.     All Claims Against Each Individual Defendant Fail**

Oelker's claims against the named defendants each fail to state a claim upon which relief can be granted.

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Oelker also asserts claims under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. 1-1 at pp. 3-4). In *Bivens*, the United States Supreme Court recognized a cause of action for monetary damages against federal officials in their individual capacities for a violation of constitutional rights. A *Bivens* action is the federal equivalent to an action brought under § 1983, and a plaintiff asserting a *Bivens* claim must show that the defendant was acting under color of federal law. *Cox v. Hellerstein*, 685 F.2d 1098, 1099 (9th Cir. 1982).

The Complaint does not state a plausible § 1983 or *Bivens* claim.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

### 1. The State of Idaho

The first named Defendant is the State of Idaho. However, under the principle of sovereign immunity enshrined in the Eleventh Amendment to the U.S. Constitution, states and state entities are immune from suit in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890). If Plaintiff intends to pursue his claims against the State of Idaho, he must do so in state court.

### 2. Public Defender Brennan Wright

Oelker asserts that the public defender in his state criminal action, Brennan Wright, violated Plaintiff's "1st, 4th, 5th, 6th, 8th, 9th, and 14th" amendment rights by "refus[ing] to defend [his] right to fairness and adversary process by [o]mission" and "furthering the conspiracy to keep [him] [u]nlawfully restrained." (Dkt. 1-1 at p. 3) (cleaned up). Oelker further asserts that Wright's failure to object to the Lewis County Court's imposition of bail amounted to ineffective assistance of counsel. (Dkt. 1 at p. 6; Dkt. 1-4 at pp. 15-16). Oelker alleges Wright wrongfully failed to object to perceived violations by the county, resulting in the current warrant for Oelker's arrest and contributing to the claimed unlawful restraint of liberty. (Dkt. 1 at p. 5).

The law is clear that a public defender does not act under color of state law when representing an indigent defendant in criminal proceedings. *Cox*, 685 F.2d at 1099 (federal criminal context). Therefore, the Court lacks jurisdiction over Plaintiff's claims. *See id.* In *West v. Atkins*, 487 U.S. 42 (1988), the United States Supreme Court explained:

> [In] *Polk County v. Dodson*, [454 U.S. 312 (1981)] . . . [t]he Court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." 454 U.S., at 325, 102 S. Ct., at 453. In this capacity, the Court noted, a public defender differs from the typical government employee and state actor. While performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his "professional independence," which the State is

> constitutionally obliged to respect. *Id.*, at 321-322, 102 S. Ct., at 451. A criminal lawyer's professional and ethical obligations require him to act in a role independent of and in opposition to the State. *Id.*, at 318-319, 320, 102 S. Ct., at 450. The Court accordingly concluded that when representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for purposes of § 1983 because he "is not acting on behalf of the State; he is the State's adversary." *Id.*, at 323, n. 13, 102 S. Ct., at 452, n. 13. *See also Lugar v. Edmondson Oil Co.*, 457 U.S., at 936, n. 18, 102 S. Ct., at 2753, n. 18.

*Id. at 50*. As a result, Oelker cannot sue Wright under § 1983.

If Oelker believes Wright caused him to be wrongfully convicted or given an improper sentence, he must pursue those claims in a state *post-conviction* matter through the level of the Idaho Supreme Court, and then through a federal habeas corpus action under 28 U.S.C. § 2254 in this Court. All claims against attorney Brennan Wright are subject to dismissal with prejudice for failure to state a claim upon which relief can be granted.

### 3.  Claims Against Chief Judge David Nye Are Barred by Judicial Immunity

Oelker asserts that Chief Judge Nye violated Oelker's First Amendment right to petition and be heard, denied Oelker his Due Process rights under the Fifth Amendment, and "[b]latently he violated established law (Impropriety)." (Dkt. 1-1 at p. 4). Oelker asserts that Chief Judge Nye furthered the "Unlawful Restraint upon [Plaintiff's] Liberty" and violated 42 U.S.C. 1985(3) by denying Oelker the right to amend, have an evidentiary hearing, or object. (Dkt. 1-1 at p. 4). Oelker refers to *State v. Oelker*, District of Idaho Case No. 3:20-CV-00383, a terminated federal proceeding wherein Oelker unsuccessfully attempted to remove the state criminal proceedings to the District Court and Chief Judge Nye dismissed the action with prejudice for lack of jurisdiction in three separate orders. (*See* 3:20-CV-00383 Dkts. 10, 28, 33). Oelker asserts that Chief Judge Nye's dismissal of the various motions to remove the state criminal proceeding to federal court

denied him his due process rights and violated his First Amendment right to be heard. Oelker demands two hundred billion in gold, and nominal damages of one dollar. (Dkt. 1-1 at p. 5).

Under the doctrine of absolute judicial immunity, a judge is not liable for monetary damages for acts performed in the exercise of his judicial functions. *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). To determine whether an act is judicial in nature so that immunity would apply, a court looks to "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 362.

Once it is determined that a judge was acting in his judicial capacity, absolute immunity applies, "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted). For example, judicial immunity is not lost "by allegations that a judge conspired with one party to rule against another party: 'a conspiracy between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges.'" *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) (quoting *Ashelman*, 793 F.2d at 1078, *superseded by statute on other grounds*).

In addition, "judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988).

There are two circumstances in which absolute judicial immunity does not apply. First, a judge may not rely on immunity when he or she performs an act that is not "judicial" in

nature. *Stump*, 435 U.S. at 360. For example, a justice of the peace who left the bench and personally used physical force to evict a person from the courtroom was deemed to have committed a nonjudicial act not covered by absolute immunity. *See Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974). On the other hand, when a judge ordered officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom," judicial immunity applied, because a "judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Mireles*, 502 U.S. at 12. Judicial immunity was not denied even though the judge erred in authorizing the officers to use excessive force, because it is the nature and function of the act (ordering officers to act), not the act itself that is scrutinized.

Second, absolute immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356-57 (internal citations omitted). When immunity is at issue, the scope of a judge's jurisdiction "must be construed broadly . . . . A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id.* at 356.

In reviewing an allegation that a judge acted in the clear absence of all jurisdiction, the Court considers whether the judge was acting beyond the scope of the subject matter jurisdiction of the court in which he presided. *See id.* at 356-57; *Ashelman*, 793 F.2d at 1076. In instances where "jurisdiction over the subject-matter is invested by law in the judge or in the court which he holds, the manner and extent which the jurisdiction shall be exercised are generally as much questions for his [or her] determination as any other questions involved in the case . . . . " *Stump*, 435 U.S. at 356 n.6.

When a U.S. District Court receives a notice of removal, the Court is required to "examine the notice promptly." 28 U.S.C. § 1455(b)(4). The statute confers on the Court jurisdiction to make

an order for summary remand if it "clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted." *Id.* This is because "[f]ederal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (cleaned up). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (cleaned up).

Here, Oelker complains of actions and decisions Chief Judge Nye made in the course of presiding over Oelker's notice of removal that resulted in Chief Judge Nye dismissing the claims for lack of jurisdiction and remanding any open issues to Idaho state court. (*See* 3:20-cv-00383-DCN Dkts. 10, 28, 33). Oelker complains only of actions Chief Judge Nye took or failed to take in the exercise of his judicial functions, any of which were within his lawful authority as district court judge. Oelker does not allege that Chief Judge Nye acted without jurisdiction, but alleges that Chief Judge Nye made the wrong decisions within the case. As such, Chief Judge Nye is entitled to absolute judicial immunity from Oelker's cause of action. All claims against Chief Judge Nye will be dismissed with prejudice.

**B.     Oelker's Remaining Claims**

Oelker complains of actions taken by state of Idaho officials—including a judge, a prosecutor, and a public defender—in *State v. Oelker*, Lewis County Case No. CR31-20-0097, which is an ongoing state criminal case. (Dkt. 1-3) (correcting incorrect case number cited in Petition). The Court takes judicial notice of the ongoing state proceedings cited in the petition. *See id.*, docket available at https://icourt.idaho.gov/ (accessed October 8, 2024); *see also* (Dkt. 1-1 at

p. 4). It also appears from Oelker's own admissions that Oelker is not currently detained and is living in Nevada. *See* (Dkts. 1-1 at p. 2, 6; 1-2 at p. 1; 1-3 at p. 1). Because Oelker is not in custody, and because this Court cannot invalidate ongoing state criminal prosecutions, the Court abstains from exercising jurisdiction over Oelker's remaining claims.

The Court is required to screen complaints brought by litigants who proceed in forma pauperis. *See* 28 U.S.C. § 1915(e)(2). The Court must dismiss a plaintiff's complaint, or any portion thereof, if it is (1) frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

To state a claim upon which relief can be granted, a plaintiff's complaint must include facts sufficient to establish a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although Rule 8 "does not require detailed factual allegations . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

During this review, courts generally construe pro se pleadings liberally, giving pro se plaintiffs the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Even so, plaintiffs—whether represented or not—have the burden of articulating their claims clearly and alleging facts sufficient to support review of each claim. *See Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). Additionally, if amending the complaint would remedy the deficiencies, plaintiffs

should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### 1. The Court Abstains from Exercising Jurisdiction Because Under the *Younger* Doctrine, the Court Cannot Invalidate a Criminal Prosecution in Progress

Because some, if not all, of Oelker's claims challenge Oelker's battery and obstruction charges—which appear to be pending in state court—those claims may be subject to dismissal pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). In *Younger*, the United States Supreme Court reiterated the importance of the principle of comity between state and federal courts, holding that federal courts generally must abstain from hearing civil rights claims related to pending state criminal cases. Adjudicating such claims is allowed only in the rarest of circumstances—that is, where "the threat to the plaintiff's federally protected rights . . . cannot be eliminated by his defense against a single [state] criminal prosecution." *Id.* at 46.

For a court properly to abstain from hearing a case under the *Younger* doctrine, three factors must be present: (1) there must be an ongoing state judicial proceeding; (2) the proceeding must implicate an important state interest; and (3) there must be an adequate opportunity in the state proceeding to raise the constitutional challenge. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Where abstention is appropriate, a court may entertain the action only if "extraordinary circumstances" are present, including: (1) where irreparable injury is both "great and immediate"; (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions"; or (3) where there is a showing of "bad faith, harassment, or any other unusual circumstances that would call for equitable relief." *Younger*, 401 U.S. at 46, 53-54.

In this case, if this Court were to interfere in Oelker's ongoing state criminal case, the principle of comity would not be served. Important state interests are at stake where criminal

proceedings are involved, as discussed in *Younger*. Oelker has a remedy in the state court system, and there is no indication that the state courts are not fully capable and willing to adjudicate the constitutional issues raised by Oelker. Because the three *Younger* abstention factors are present, and because no "extraordinary circumstances" exist to allow Oelker to proceed on his federal claims at this time, the Court concludes that abstaining from Oelker's civil rights claims is appropriate.

### 2. The Habeas Corpus Claim is Inapplicable

Federal habeas corpus relief under 28 U.S.C. § 2254 is available to petitioners who show that they are held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). The Court is required to review a habeas corpus petition upon receipt to determine whether it is subject to summary dismissal. Summary dismissal is appropriate where "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4 of the Rules Governing Section 2254 Cases; *see also Pinson v. Carvajal*, 69 F.4th 1059, 1065 (9th Cir. 2023) (stating, in the context of a § 2241 petition, that "district courts are expected to take 'an active role in summarily disposing of facially defective habeas petitions.'") (quoting *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998)).

Oelker's petition does not challenge a criminal conviction or a sentence. Instead, it asserts that the "unlawful restraint of [Oelker's] liberty" through "unlawful seizure/bail" and the active "misdemeanor warrant" are sufficient bases for custody under 28 U.S.C. § 2254. (Dkts. 1-2 at p. 1, 4; 1-3 at p. 1). Oelker refers to the $10,000 bail he paid in the ongoing state proceedings. (Dkt. 1-3 at pp. 1-2). As established, Oelker is not in custody; he is living in Nevada. (Dkts. 1-1 at pp. 2, 6; 1-2 at p. 1; 1-3 at p. 1).

These claims are not cognizable, meaning they cannot be asserted, in a federal habeas corpus action. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and "the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of confinement.") (internal quotation marks omitted). "Absent a custodial sentence, or other recognized restraints, one is not in custody within the meaning of the federal habeas corpus statute." *Furey v. Hyland*, 395 F. Supp. 1356, 1358-60 (D.N.J. 1975) (noting writ of habeas can be available to persons released on parole or released on their own recognizance, but fine-only sentences are an insufficient restraint on liberty to avail the remedy), *aff'd*, 532 F.2d 746 (3d Cir. 1976). "Thus, custody is the passport to federal habeas corpus jurisdiction. Without custody, there is no detention. Without detention, or the possibility thereof, there is no federal habeas jurisdiction." *United States ex rel. Dessus v. Pennsylvania*, 452 F.2d 557, 560 (3d Cir. 1971).

Oelker's assertions that he is constructively detained in Nevada are unconvincing. It is abundantly clear from the face of the petitions, complaint, and exhibits that Oelker is not entitled to relief under 28 U.S.C. § 2254 because he is not in custody. Oelker has not yet been sentenced in the state proceedings, and absconding to Nevada is his own choice rather than a form of confinement as he would have this Court believe. Section 2254(a) only permits this Court to entertain a petition for writ of habeas corpus from a person "in custody pursuant to the judgment of a State court." As established, the state court proceedings are ongoing, and Oelker is not in custody. Therefore, the petitions for writ of habeas are summarily dismissed without leave to amend.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 12**

C.   **Opportunity to Amend**

The Court now considers whether to allow Oelker an opportunity to amend the complaint or petitions for writ of habeas. Amendments to pleadings are governed by Rule 15 of the Federal Rules of Civil Procedure. That rule states that the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has explained the reasoning behind allowing the opportunity to amend:

> In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities. This court has noted on several occasions that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a) . . . by freely granting leave to amend when justice so requires. Thus Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.

*Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (internal citations, quotation marks, and alterations omitted).

This liberal amendment policy is even more important with respect to pro se plaintiffs, who generally lack legal training. Courts must liberally construe civil rights actions filed by pro se litigants so as not to close the courthouse doors to those truly in need of relief. *Id.* at 1135, 1137. A pro se litigant bringing a civil rights suit must have an opportunity to amend the complaint to overcome deficiencies unless it is clear that those deficiencies cannot be overcome by amendment. *Id.* at 1135-36. Although several factors contribute to the analysis of whether a plaintiff should be allowed an opportunity to amend, futility alone can justify denying such an opportunity. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). *See, e.g.*, *Bykov v. Rosen*, 703 F. App'x 484, 485 (9th Cir. 2017) ("The district court properly dismissed without leave to amend Bykov's constitutional right-to-medical-privacy claims for monetary damages against Judge Rosen and Officer Rogers because they are entitled to judicial and quasi-judicial immunity, respectively.")

The Court concludes that amendment in this case would be futile. Oelker's claims are barred not because he has failed to allege sufficient facts—a deficiency that could be cured by amendment—but because it is clear from the face of the complaint that various legal doctrines prohibit such claims, as explained above. Therefore, the Court will dismiss the complaint and petitions for writ of habeas without leave to amend. Consequently, Oelker's motion for electronic filing (Dkt. 9) is denied as moot.

## IV. CONCLUSION

While Oelker appears to have limited financial resources, the Court finds that Oelker's complaint and petitions fail to state a claim and are dismissed with prejudice and without leave to amend.

## V. ORDER

**IT IS ORDERED that:**

1. The In Forma Pauperis Application (Dkt. 1) is **DENIED**.

2. The Complaint for a Civil Case (Dkt. 1-1 is **DISMISSED WITH PREJUDICE**.

3. The Petitions for Writ of Habeas Corpus (Dkts. 1-2, 1-3) are **DISMISSED WITH PREJUDICE.**

4. The Motion to File Electronically (Dkt. 9) is **DENIED AS MOOT**.

DATED: December 20, 2024

Amanda K. Brailsford
U.S. District Court Judge